**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **JOSE CAMPOS, individually and on behalf of all others similarly situated,** | |
| Plaintiff, | CIVIL ACTION NO. 1:22-cv-00744 |
| v. | COLLECTIVE ACTION |
| **JBS USA FOOD COMPANY HOLDINGS,** | JURY TRIAL DEMANDED |
| Defendant. | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Jose Campos (hereafter referred to as "Plaintiff"), individually and on behalf of all other similarly situated employees, files this Complaint against JBS USA Food Company Holdings (hereafter referred to as "Defendant"), showing in support as follows:

### I. NATURE OF ACTION

1. This is a civil action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, seeking damages for Defendant's failure to pay Plaintiff wages at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of forty (40) hours in any workweek and Defendant's failure to include all remunerations in the calculation of its overtime rate.

2. Plaintiff files this lawsuit individually and as an FLSA collective action on behalf of all similarly situated current and former hourly paid employees of Defendant who were not paid at their regular rate for all hours worked and thus were denied overtime pay and the correct premium rate, and who were not paid one and one-half times their respective regular rates of pay

1

for all hours worked over 40 in each seven-day workweek in the time period of three years preceding the date this lawsuit was filed and forward (the "Collective Action Members").

3. Plaintiff and the Collective Action Members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.   JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims are based on federal law, namely the FLSA. *See* 29 U.S.C. § 216(b).

5. The United States District Court for the District of Colorado has personal jurisdiction over Defendant because Defendant does business in Colorado, and Defendant is headquartered in Colorado.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and conduct charged herein occurred in this district and because Defendant is headquartered in this District.

## III.   PARTIES

7. Plaintiff lives in Moore County, Texas. Plaintiff was employed by Defendant from approximately May 2019 to May 2020 as an hourly paid Maintenance Technician. Plaintiff's written consent to participate in this lawsuit is filed along with this Original Complaint as Exhibit 1.

8. The Collective Action Members consist of all current and former hourly paid employees who worked for Defendant for any work week during the period of three years prior to the Court certifying a collective action to the present.

9. JBS USA Food Company Holdings is a foreign for-profit corporation, headquartered in Greeley, Colorado, that may be served with process through its registered agent for service: Corporation Service Company, 1900 West Littleton Boulevard, Littleton, Colorado 80120.

## IV. FLSA COVERAGE

10. At all times relevant to this dispute, Plaintiff and the putative Collective Action Members are or have been an employee within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

11. At all times relevant to this dispute, Defendant has been an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

12. At all times relevant to this dispute, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

13. At all times relevant to this dispute, Defendant has had gross annual sales at or in excess of $500,000.

14. At all times relevant to this dispute, Plaintiff and the putative Collective Action Members were employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

15. At all times relevant to this dispute, Defendant has been an enterprise in commerce within the meaning of Section 203(s)(1)(A) of the FLSA, because Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

## V. FACTUAL BACKGROUND

16. At all times relevant to this dispute, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. § 201, *et seq*.

17. At all times relevant to this dispute, Plaintiff has worked in excess of 40 hours in a workweek, and as a result, has been entitled to overtime wages at a rate of not less than one and one-half times his regular rate of pay for all the hours or work in excess in a workweek. 29 U.S.C. § 207.

18. Defendant is in the business of processing, preparing, packaging, and delivering fresh beef, pork, poultry, and other prepared foods products for sale to retailers, foodservice distributors, and restaurants throughout the United States and in various other countries.

19. Plaintiff was employed by Defendant as a Maintenance Technician. Plaintiff's principal activity was ensuring and maintaining safety in the handling, preparing, and packaging of food products and taking precautions to reduce the risk of contaminants. Plaintiff was charged with performing this principal activity every moment that he was within Defendant's facility from the moment he began screening prior to his shifts until he left the Defendant's facility at the end of his shift. Plaintiff performed his principal activity by, among other things, wearing proper personal protective equipment and overseeing the facility's vacuum sealer system to make certain each package of meat was sealed in an adequate manner, so that consumers would enjoy fresh, uncontaminated meat.

20. Plaintiff's scheduled paid shifts ranged from 8 hours to 16 hours in a single workday. However, during each shift, Plaintiff worked more than the respective scheduled hours

of work because he performed work that was integral and indispensable to his principal activities prior to his scheduled paid shifts.

21.     Defendant did not compensate Plaintiff for the time that he spent performing daily work outside of his regularly scheduled paid shifts. Defendant required Plaintiff to work up to 60 minutes before each scheduled shift, and 20 minutes after each scheduled shift without compensating Plaintiff for this work.

22.     Defendant has deprived Plaintiff of regular and overtime compensation by failing to compensate him for the time Defendant required him to spend engaging in pre-shift activities, including but not limited to the work activities described in paragraphs 24, 31, and 33, which must be performed on Defendant's premises.

23.     Defendant has deprived Plaintiff of overtime compensation by failing to compensate him for the time Defendant required him to spend engaging in post-shift activities, including but not limited to the work activities described in paragraph 26, which must be performed on Defendant's premises.

*Donning and Doffing*

24.     Prior to each paid shift, Plaintiff performed many pre-shift work duties that are necessary and integral to his overall employment responsibilities, including, but not limited to, donning personal protective equipment such as aprons, gloves, boots, goggles, obtaining tools, equipment, and supplies necessary for the performance of his work, and walking to the time clock on a different floor of Defendant's facility.

25.     All pre-shift activities were performed prior to Plaintiff's paid shift start time.

26. After each paid shift, Plaintiff performed many post-shift work duties that are necessary and integral to his overall employment responsibilities, including, but not limited to, doffing of personal protective gear and cleaning and sanitizing equipment.

27. All post-shift activities were performed after Plaintiff's paid shift end time.

28. At the direction and control of the Defendant, and solely for the benefit of the employer and/or their customers, Plaintiff underwent the donning and doffing of personal protective equipment, and sanitizing of equipment and materials. In doing so, Plaintiff was performing his primary duty of ensuring safety in the handling, preparing, and packaging of food products and taking precautions to reduce the risk of contaminants by assuring that any outside clothing or unsanitary materials do not touch and contaminate the food products.

*Health Screens*

29. Defendant depends on the availability of thousands of employees to operate its facility. Defendant's employees work in close contact with each other. Plaintiff worked in the same vicinity as approximately 200 people, however the entire facility staffed approximately 1,500 people in a single shift.

30. Since the beginning of the COVID-19 pandemic, Defendant has faced a high risk of one or more employees becoming infected with COVID-19 at its facility and spreading the virus to a substantial portion of its employees.

31. Once the COVID-19 pandemic began in March 2020, Plaintiff began his daily pre-shift work prior to donning his personal protective gear. Plaintiff began working immediately upon reaching the grounds of Defendant's facility, where he was required to immediately stop and participate in a health screening before entering the premises. The health screening consists of a

temperature check, among other things. Thus, at the direction and control of the Defendant, and solely for the benefit of the employer and/or their customers, Plaintiff underwent a mandatory health screen to prevent the spread of the coronavirus. In undergoing this health screening, Plaintiff was performing his primary duty of ensuring safety in the handling, preparing, and packaging of food products and taking precautions to reduce the risk of contaminants by assuring that the highly contagious coronavirus does not enter the Defendant's facility.

32. According to a DOL Wage and Hour Opinion Letter:

> Time spent undergoing a physical examination is time during which the employee's freedom of movement is restricted for the purpose of serving the employer and time during which the employee is subject to the employer's discretion and control. It is immaterial whether the time spent in undergoing the required physical examination is during the employee's normal working hours or during nonworking hours. The physical examination is an essential requirement of the job and thus primarily for the benefit of the employer. Therefore, it is our opinion that the time so spent must be counted as hours worked under the FLSA.

99-02 CCH-WH ¶32,890. Opinion Letter No 2057. October 7, 1997.

33. In addition to actually undergoing these health screens prior to clocking in, Plaintiff and many other employees were required to wait in line in order to undergo these health screens. Thus, at the direction and control of Defendant, and solely for the benefit of Defendant and/or its customers, Plaintiff and all other similarly situated employees were required to wait approximately 30 minutes each day, without any compensation, in order to undergo these health screens to prevent the spread of the coronavirus. These health screens and the time spent waiting in line to undergo them happened throughout the day, 3 to 4 times a day. However, Plaintiff did not receive any compensation for them from Defendant.

34. After Plaintiff and other the other workers completed the mandatory health screening, Plaintiff continued to perform compensable (but unpaid) pre-shift work activities as part

7

of the continuous workday for which he was not paid, as described in paragraph 24. He performed these pre-shift tasks without pay.

*Defendant's FLSA Violations*

35. Defendant did not pay Plaintiff any compensation for the time it took to don his personal protective equipment, obtain tools, equipment, and supplies necessary for the performance of his work, and walk to the time clock prior to his paid shift, and for the time it took to doff his personal protective equipment, clean, and sanitize his equipment after his paid shift ended.

36. Defendant did not pay Plaintiff any compensation for the time spent waiting for and undergoing such required daily health screenings.

37. Defendant did not pay Plaintiff his regular rate for these pre-and-post-shift requirements, or one and one-half his regular hourly rate of pay whenever it required Plaintiff to work more than 40 hours in any workweek.

38. Additionally, Defendant failed to include all remunerations paid to Plaintiff for purposes of calculating overtime wages at one and one-half times his regular rate of pay for all hours worked in excess of 40 during a workweek.

39. Specifically, Defendant paid Plaintiff $19.70 per hour. When he worked over 40 hours a week, Defendant paid overtime at time and a half based on $19.70 per hour. In addition to hourly pay, Defendant paid Plaintiff additional remuneration in the form of nondiscretionary Covid-19 incentive pay. These payments were promised to Plaintiff to incentivize increased productivity. Defendant also paid Plaintiff additional remuneration in the form of meal reimbursements, and these are not considered expense reimbursements related to his work for

8

Defendant, but are instead entirely personal to the employee. However, Defendant failed to include these additional remunerations in Plaintiff's regular rate of pay when calculating his overtime wages. This failure to include all remuneration in Plaintiff's regular rate of pay violated the FLSA

## VI.     COLLECTIVE ACTION CLAIMS

40.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

41.     Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.

42.     Plaintiff seeks to bring claims under the FLSA, 29 U.S.C. § 216(b), individually and on behalf of the following collective actions defined as:

   a. **All current and former hourly paid employees of Defendant who were not paid at the proper regular rate for all hours worked because Defendant failed to include all remunerations paid, and who as a result were not paid one and one-half times their respective regular rates of pay for all hours worked over 40 in each seven-day workweek in the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.**

   b. **All current and former hourly paid employees of Defendant whose work duties include the donning and doffing of personal protective equipment on Defendant's premises before their paid shift start time and after their paid shift end time, not compensated for this time, during the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.**

   c. **All current and former hourly paid employees of Defendant who were required to undergo an unpaid COVID-19 health screening on Defendant's premises prior to their paid shift start time during the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.**

43.     Plaintiff has personal knowledge that other putative Collective Action Members were paid pursuant to the same policy, namely, they were not paid at an hourly regular rate for all

9

hours worked, and they did not receive overtime premium pay for all hours worked over forty in each seven-day workweek. Indeed, others have joined this action as Opt-In Plaintiffs who seek the same category of damages as a result of the same violations alleged by Plaintiff herein.

44. The putative Collective Action Members are not exempt from receiving overtime premium pay under the FLSA.

45. Defendant's failure to pay regular and overtime wages results from generally applicable policies or practices, and does not depend on the personal circumstances of the putative Collective Action Members.

46. The specific job titles or precise job responsibilities of each putative Collective Action Members do not prevent collective treatment.

47. Although the exact amount of damages may vary among the putative Collective Action Members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

48. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a collective action or other proceeding.

49. Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

### VII.    FLSA CAUSE OF ACTION - FAILURE TO PAY OVERTIME

50. Plaintiff incorporates the allegations in the preceding paragraphs.

51. This cause of action is brought against Defendant by Plaintiff and on behalf of the putative Collective Action Members.

52. Neither Plaintiff nor the putative Collective Action Members are exempt from the benefits of the FLSA.

53. According to 29 U.S.C. § 206(a)(l): "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: except as otherwise provided in this section, not less than— (A) $5.85 an hour, beginning on the 60th day after May 25, 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and (C) $7.25 an hour, beginning 24 months after that 60th day."

54. According to 29 U.S.C. § 207(a)(l): "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

55. Defendant failed to pay Plaintiff and the putative Collective Action Members for all hours worked over 40 in a workweek, because it did not pay Plaintiff and the putative Collective Action Members for the for the time it took to don their personal protective equipment, obtain tools, equipment, and supplies necessary for the performance of their work, and walk to the time clock prior to their paid shift, and for the time it took to doff their personal protective equipment, clean, and sanitize their equipment after their paid shift ended.

56. Requiring employees to don and doff personal protective equipment, obtain, clean, and sanitize equipment is integral and indispensable to Plaintiff and the putative Collective Action Members' duties and solely for the benefit of Defendant, necessary for Defendant's business operations, not incidental, and not *de minimis* individually or in the aggregate. Plaintiff and the putative Collective Action Members spent more than a *de minimis* amount of time preforming these activities.

57. At all times relevant to this dispute, Plaintiff and the putative Collective Action Members were entitled to be compensated with their regular wages and overtime pay for all time spent performing work prior to and after their paid shift start times.

58. Defendant has failed to count the time it took to don and doff personal protective equipment, and obtain, clean, and sanitize equipment as compensable work, depriving Plaintiff and the putative Collective Action Members of pay.

59. Additionally, Defendant has failed to count the mandatory health screenings as compensable work, depriving Plaintiff and the putative Collective Action Members of pay. Further, Defendant failed to compensate Plaintiff and the putative Collective Action Members their regular wages and overtime pay for all hours spent waiting for these mandatory health screens.

60. Defendant failed to pay Plaintiff and the putative Collective Action Members for all hours worked over 40 in a workweek, because it did not pay Plaintiff and the putative Collective Action Members for the mandatory health screenings they were required to undergo, which authorized them to begin their workday for Defendant's business.

61. Requiring employees to undergo these health screenings is integral and indispensable to Plaintiff and the putative Collective Action Members' duties and solely for the benefit of Defendant, necessary for Defendant's business operations, not incidental, and not *de minimis* individually or in the aggregate. Plaintiff and the putative Collective Action Members spent more than a *de minimis* amount of time preforming these health screens.

62. As a result of Defendant's failure to count as compensable work time the required pre-and-post-shift tasks, Plaintiff and the putative Collective Action Members have not been compensated for all hours of work as required by the FLSA.

63. As a result of Defendant's failure to pay Plaintiff and the putative Collective Action Members appropriate overtime wages for all of the hours worked each week, Defendant violated the FLSA.

64. Finally, Defendant failed to include all remunerations paid when it calculated the regular rate and overtime rates, in violation of the FLSA.

65. Defendant willfully violated the FLSA. Defendant either knew it should have counted as compensable work the required pre-and-post-shift tasks Plaintiff and the putative Collective Action Members performed, and knew it should have paid Plaintiff and the putative Collective Action Members 1.5 times their regular rates of pay for each overtime hour worked, or Defendant recklessly disregarded its obligation to do so. Consequently, Defendant is liable for the entire three-year period, pursuant to the FLSA.

66. Plaintiff and the putative Collective Action Members are entitled to compensation for all hours worked in excess of forty (40) in a workweek calculated at one and one-half times their regular rate of pay, an amount equal to all of their unpaid wages as liquidated damages, as

well as their reasonable and necessary attorneys' fees and costs of this action. 29 U.S.C. § 201, *et seq.*, 29 U.S.C. § 216(b).

## VIII. JURY DEMAND

67. Plaintiff demands a jury trial.

## IX. DAMAGES AND PRAYER

68. Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff and the putative Collective Action Members be awarded a judgment against Defendant or order(s) from the Court for the following:

   a. An order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all putative Collective Action Members;

   b. All damages allowed by the FLSA, including back wages;

   c. Liquidated damages in an amount equal to FLSA-mandated back wages;

   d. Legal fees;

   e. Costs;

   f. Post-judgment interest;

   g. All other relief to which Plaintiff and the putative Collective Action Members may be justly entitled.

Dated: March 25, 2022               Respectfully submitted,

                                    SHELLIST | LAZARZ | SLOBIN LLP

                                    By:   */s/ Ricardo J. Prieto*
                                          Ricardo J. Prieto
                                          Texas Bar No. 24062947
                                          rprieto@eeoc.net
                                          Melinda Arbuckle
                                          Texas Bar No. 24080773
                                          marbuckle@eeoc.net

14

        11 Greenway Plaza, Suite 1515
        Houston, TX 77046
        Telephone: (713) 621-2277
        Facsimile: (713) 621-0993

ATTORNEYS FOR PLAINTIFF AND PUTATIVE COLLECTIVE ACTION MEMBERS